# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **LAKISHA A. AUSTIN,** )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>**FULCOM, LLC,** *d/b/a Comfort Suites*, )<br>)<br>Defendant. ) | Civil Action Number<br>**2:11-cv-03214-JEO** |

## MEMORANDUM OPINION

Lakisha A. Austin ("plaintiff") filed this action against her former employer Fulcom, LLC,[1] ("defendant"), alleging that she was subjected to race discrimination in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and to discrimination and retaliation in violation of Title VII. (Doc. 1).[2] Defendant moves for summary judgment on the threshold issue of judicial estoppel, asserting that plaintiff failed to disclose the underlying claims in her bankruptcy proceedings. (Doc. 15 at 3). For the reasons set forth below, defendant's Motion for Summary Judgment (doc. 14) is due to be granted.

## I. FACTS AND PROCEDURAL BACKGROUND

Nearly all the pertinent facts for the Motion for Summary Judgment are undisputed. Defendant owns and operates a Comfort Suites hotel in Fultondale, Alabama, and plaintiff, who is African American, applied for a position at the hotel on April 9, 2010. (Doc. 16-1, Plaintiff's

---

[1] Plaintiff initially filed this action against "Choice Hotels International, Inc., d/b/a Comfort Suites." (Doc. 1). She amended the Complaint as against "Stafford Development Company d/b/a Comfort Suites," which defendant asserts was incorrectly named. (Docs. 5 & 14).

[2] All references to "Doc.____" refer to the document numbers assigned by the Clerk of the Court.

Application, at 62-63).  Exactly two month prior to submitting her application, February 9, 2010, plaintiff filed a Chapter 13 Voluntary Petition in the United States Bankruptcy Court, Northern District of Alabama.[3]  *See* Case No. 10-00812-TBB13 ("the February 2010 bankruptcy"); (Doc. 16-1, Petition, at 2-50).  Five days later, February 15, 2010, plaintiff amended her Chapter 13 Plan.  (Doc. 16-1, Amended Petition, at 52-53).  The bankruptcy court confirmed the plan on May 3, 2010.  (Doc. 16-1, Confirmation Order, at 58-60).

On May 18, 2010, defendant hired plaintiff as a van driver and housekeeper subject to her background check "coming back as 'Meets Company Policy.'"  (Doc. 16-1, Authorization for Background Check, at 65).  Defendant subsequently screened plaintiff through the "HireRight Screening Report," which subsequently reported that plaintiff "Does Not Meet Company Standards."  (Doc. 16-1, Report, at 67).  Defendant terminated plaintiff on July 2, 2010, and on September 22, 2010, she filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that defendant subjected her to unlawful discrimination and retaliation.  (Doc. 16-1, EEOC Charge, at 69-70).

On December 22, 2010, the Trustee assigned to the February 2010 bankruptcy filed a Notice of Continuing Default.  (Doc. 16-1, Notice, at 72).  Five days later, December 27, 2010, the bankruptcy court dismissed the February 2010 bankruptcy.  (Doc. 16-1, Dismissal, at 77).  Plaintiff moved to set aside the dismissal, which the court denied on February 15, 2011.  (Doc. 16-1, at 80-83).

Seven days later, February 22, 2011, plaintiff filed another Chapter 13 Voluntary Petition in the bankruptcy court.  *See* Case no. 11-00918-TBB13 ("February 2011 bankruptcy"); (Doc.

---

[3]The petition was previously filed in March 2009 by plaintiff's previous attorney.  (Doc. 16-1, Petition, at 5).

2

16-2, Petition, at 2-48).  When plaintiff filed the petition her charge of discrimination was still pending at the EEOC.  Relevant here, paragraph 20 of Schedule B-Personal Property disclosure within the petition inquires into "Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims."  (Doc. 16-2, Schedule B, at 50-51).  Plaintiff marked an "X" in the column to indicate "None."  (*Id*.)  Additionally, the Statement of Financial Affairs within the petition seeks information related to "Income from Employment" for the "**two years** immediately preceding this calendar year" as well as information related to "administrative proceedings to which the debtor is or was a party within **one year** immediately preceding the filing of this bankruptcy case."  (Doc. 16-2, Statement of Financial Affairs, at 53-54) (emphasis original).  In response, plaintiff omitted any reference to her employment with defendant or to her EEOC charge.  (*Id*.)  However, she did identify a breach-of-contract case against her in the small claims court of Jefferson County, Alabama.  (Doc. 16-2 at 54) (citing *Standard Furniture Co. v. Lakisha Austin*, No. SM02-1454).  Plaintiff amended her Chapter 13 Plan and her Statement of Financial Affairs in March 2011, but she again failed to identify her employment with defendant or her EEOC charge.  (Doc. 16-2 at 60-67).

On June 8, 2011, plaintiff received a right to sue notice from the EEOC.  (Doc. 16-2, Notice, at 69-70).  On August 17, 2011, the bankruptcy court granted the Trustee's Motion to Dismiss Case for Failure to Make Plan Payments.  (Doc. 16-2, Order, at 72).  Approximately three weeks later, September 6, 2011, plaintiff commenced this action.  (Doc. 1).  Defendant answered the Complaint, denying all substantive allegations and asserting the affirmative defense of judicial estoppel.  (Doc. 9).

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (*per curiam*) (citation to former rule omitted); FED. R. CIV. P.56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[4]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [-now dispute-] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–24.  "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  A judge's guide is the same standard necessary to direct a verdict: "whether the evidence presents a

---

[4]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed. R. Civ. P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision ©, changing only one word-genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id.* "'Shall' is also restored to express the direction to grant summary judgment." *Id.* Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Anderson*, 477 U.S. at 259). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249; *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden" so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988) (quoting *Anderson*, 477 U.S. at 254). Nevertheless, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Allen*, 121 F. 3d at 643.

### III.  ANALYSIS

As referenced above, defendant argues that it is entitled to summary judgment because the doctrine of judicial estoppel bars plaintiff's claims. Defendant specifically invokes the doctrine because plaintiff omitted any reference to the claims in her February 2010 and February 2011 bankruptcy proceedings. In view of these omissions, judicial estoppel is clearly relevant because it is "designed to 'prevent a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by the party in a previous preceding.'" *Robinson v. Tyson Foods,*

5

*Inc.*, 595 F.3d 1269, 1273 (11th Cir. 2010) (quoting 18 Moore's FEDERAL PRACTICE § 134.30 (3d ed. 2008)). The purpose of the doctrine is "to protect the integrity of the judicial process by prohibiting parties from changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). Judicial estoppel is an equitable doctrine invoked at the court's discretion. *See Stephens v. Tolbert*, 471 F.3d 1173, 1177 (11th Cir. 2006).

Although the circumstances under which judicial estoppel arises are generally "not reducible to any general formulation of the principle," the Supreme Court and Eleventh Circuit have identified several considerations for determining whether to apply the doctrine. *See New Hampshire*, 532 U.S. at 750-51; *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002). In *New Hampshire v. Maine*, the Supreme Court identified the following considerations:

> (1) whether the present position is clearly inconsistent with the earlier position; (2) whether the party succeeded in persuading a court to accept the earlier position, so that judicial acceptance of the inconsistent position in a later proceeding would create the perception that either the first or second court was mislead and; (3) whether the party advancing the inconsistent position would derive an unfair advantage.

*Id*. at 750-51. The Eleventh Circuit has further condensed these three considerations to two: "First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system." *Burnes*, 291 F.3d at 1285. The *Burnes* panel opined that these two factors alone "provide courts with sufficient flexibility in determining the applicability of the doctrine of judicial estoppel based on the facts of a particular case." 291 F.3d at 1285-86; *see also Barger v. City of Cartersville, Ga.*, 348 F.3d 1289, 1293 (11th Cir. 2003) (recognizing that "applicability of judicial estoppel largely turns on two factors" listed above). Application of the

factors from *Burnes* favors dismissal of plaintiff's claims for the foregoing reasons.

    A.    **Inconsistent Positions**

First, the facts underlying this case clearly demonstrate that plaintiff took inconsistent positions in the administrative proceedings that proceeded this lawsuit and in the bankruptcy court. Plaintiff filed a charge against defendant with the EEOC on September 22, 2010, for the purpose of bringing the present lawsuit, but then disclosed neither the charge, nor the potential lawsuit in her February 2010 or February 2011 bankruptcy proceedings. The law is clear that "[a] debtor seeking shelter under the bankruptcy laws has a statutory duty to disclose all assets, or potential assets to the bankruptcy court," and a discrimination claim evidenced by an EEOC charge is clearly a potential asset. *Robinson*, 595 F.3d at 1274 (citing 11 U.S.C. §§ 521(1), 541(a)(7)). Moreover, the duty to disclose is a continuing one that continues throughout the bankruptcy proceedings as "the debtor must amend [her] financial statements if circumstances change." *Burnes*, 291 F.3d at 1286. Here, plaintiff neither amended her February 2010 bankruptcy petition to reflect the EEOC charge, nor disclosed the EEOC charge in her February 2011 bankruptcy petition.

Plaintiff appears to argue that the filing of her EEOC charge was immaterial to her bankruptcy proceedings because "[a] Charge of Discrimination is not a lawsuit, but an administrative procedure to initiate an investigation of the accused employer," and, therefore, "it cannot be presumed that an actual lawsuit would be filed against the employer." (Doc. 21-1 at 5-6). This argument is without merit as the bankruptcy laws explicitly require disclosure of all existing and *potential* assets. *See* 11 U.S.C. §§ 521(1), 541(a)(7); *see e.g.*, *Casanova v. Pre Solutions, Inc.*, 228 Fed. App'x 837, 841 (11th Cir. 2007) (applying judicial estoppel where

plaintiff failed to disclose his EEOC charge).  Moreover, the Statement of Financial Affairs within plaintiff's February 2011 bankruptcy petition specifically inquires into "suits, and *administrative proceedings*, executions, garnishments and attachments" and plaintiff omitted any reference to her charge pending with the EEOC, an administrative agency.  (Doc. 16-2, at 54).  In sum, plaintiff clearly took inconsistent positions between the administrative proceedings that proceeded this lawsuit and the bankruptcy court.  *See also Burnes*, 291 F.3d at 1286 ("Full and honest disclosure in a bankruptcy case is crucial to the effective functioning of the federal bankruptcy system.") (internal quotation marks and citation omitted).

### B.    Mockery of Judicial System

The court further finds that plaintiff's inconsistent positions were intended to make a mockery of the judicial system.  To establish that plaintiff intended to make a mockery of the judicial system, defendant must demonstrate that the inconsistent positions are not "the product of inadvertence or mistake."  *Burnes*, 291 F.3d at 1287 (quoting *Matter of Cassidy*, 892 F.2d 637, 642 (7th Cir. 1990)).  In relation to judicial estoppel for bankruptcy cases, the Eleventh Circuit has specifically stated that "the debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment.'"  *Robinson*, 595 F.3d at 1275 (citing *Barger*, 348 F.3d at 1295-96).  "While an estopped party's contradiction must be intentional, such intent may be inferred from the record."  *Id*. (citing *Burnes*, 291 F.3d at 1285).  Furthermore, when evaluating potential motive, "the relevant inquiry is intent at the time of non-disclosure."  *Id*. at 1276 (citing *Casanova*, 228 Fed. App'x at 841).  Significant here, the law within the Eleventh Circuit is established that "[a] financial motive to secret assets exists under Chapter 13 ... because the

8

hiding of assets affects the amount to be discounted and repaid." *De Leon v. Comcar Indus., Inc.*, 321 F.3d 1289, 1291 (11th Cir. 2003).

Here, plaintiff has not and cannot disclaim knowledge of her claim against defendant because she personally signed the EEOC charge while the February 2010 bankruptcy was pending. (Doc. 16-1, EEOC charge, at 69). She also plainly had a financial motive to omit the discrimination claim from the bankruptcy court because omission of the claims "affects the amount to be discounted and repaid" such that her "amount of repayment would be less" if the claims were omitted from her assets. *De Leon*, 321 F.3d at 1291-92. Further, "by omitting the claims, she could keep any proceeds for herself and not have them become part of her bankruptcy." *Barger*, 348 F.3d at 1296.

Plaintiff contends the omissions were inadvertent because she merely relied on her bankruptcy attorney to submit all necessary paperwork for her bankruptcy proceedings. (Doc. 21-1 at 4). This argument is unavailing because bankruptcy laws require verification by the petitioner (FED. R. BANKR. P. 1008) and plaintiff signed her bankruptcy documents under penalty of perjury. (Doc. 16-2 at 58). Lastly, plaintiff appears to argue that her omissions do not make a mockery of the judicial system because the bankruptcy court dismissed her February 2011 bankruptcy before she filed the Complaint in the present action. (Doc. 21-1 at 2). This argument is also unavailing. Although her February 2011 bankruptcy proceedings were dismissed before she filed this lawsuit, the Eleventh Circuit has advised that "the relevant inquiry is intent *at the time of nondisclosure*." *Robinson*, 595 F.3d at 1276 (emphasis added). The record evidence is clear that plaintiff's bankruptcy proceedings were ongoing when she omitted the underlying claims and that she repeatedly omitted the claim. On September 22, 2010, the EEOC charge was

filed (doc. 21-3, Charge, at 2); on June 8, 2011, the EEOC right to sue letter was issued (doc 16-2, Notice, at 69-70); on August 17, 2011, when plaintiff's most recent bankruptcy petition was dismissed, plaintiff had not as of yet disclosed her claim against defendant. In sum, because plaintiff clearly knew about the undisclosed claims and stood to benefit financially at her creditors' expense by concealing them, the court infers from the record evidence that she inteded to make a mockery of the judicial system.

Finally, it is appropriate to consider additional factors in weighing the totality of the circumstances as to whether judicial estoppel should bar plaintiff's claims. *Ajaka*, 453 F.3d at 1344 (11th Cir. 2006) ("Judicial estoppel is intended to be a flexible rule in which courts must 'take into account all of the circumstances of each case in making our determination.'") (internal citations omitted). However, under the facts of this action the court finds that it is proper to apply judicial estoppel to plaintiff's claims against defendant. "Judicial estoppel is an equitable doctrine invoked at a court's discretion." *Burnes*, 291 F.3d at 1285. The court can clearly infer that plaintiff knew of the EEOC charge and that the different positions taken by her were intended to make a mockery of the judicial system.

## IV. CONCLUSION

For the foregoing reasons, defendant Fulcom, LLC's Motion for Summary Judgment (doc. 14) is due to be granted.

**DONE**, this the 15th day of March, 2012.

*/s/ John E. Ott*
**JOHN E. OTT**
United States Magistrate Judge